# IN THE SUPREME COURT OF CALIFORNIA

THE PEOPLE,

Plaintiff and Respondent,

v.

ANDREW CHRISTIAN RHODIUS,

Defendant and Appellant.

S283169

Fourth Appellate District, Division Two

E080064

Riverside County Superior Court

RIF1502535

June 26, 2025

Justice Kruger authored the opinion of the Court, in which Chief Justice Guerrero, Justices Corrigan, Liu, Groban, Jenkins, and Evans concurred.

PEOPLE v. RHODIUS

S283169


Opinion of the Court by Kruger, J.


Before 2020, the Penal Code instructed criminal sentencing courts to "impose a one-year term for each prior separate prison term or county jail term" the defendant had previously served for a felony. (Pen. Code, § 667.5, former subd. (b), added by Stats. 1976, ch. 1139, § 268, pp. 5137, 5138 and amended by Stats. 2011, ch. 15, § 442.) Effective January 1, 2020, the Legislature eliminated these one-year prior-prison-term enhancements except in cases involving prior terms for sexually violent offenses. (Stats. 2019, ch. 590, § 1.) Two years later, the Legislature made the change retroactive. (Stats. 2021, ch. 728, §§ 1, 3.) In Penal Code section 1172.75, the Legislature declared that, aside from enhancements imposed for sexually violent offenses, "[a]ny sentence enhancement that was imposed prior to January 1, 2020, pursuant to" Penal Code 667.5, subdivision (b) "is legally invalid." (Pen. Code, § 1172.75, subd. (a), added by Stats. 2021, ch. 728, § 3.) In the same provision, the Legislature established a mechanism for resentencing individuals "currently serving a term for a judgment that includes" such an enhancement. (Pen. Code, § 1172.75, subd. (b).)

The question presented is whether a defendant is entitled to resentencing under Penal Code section 1172.75 when the judgment in the defendant's criminal case includes a prior-prison-term enhancement that was imposed but then stayed. The Court of Appeal answered no. We conclude otherwise:

Penal Code section 1172.75 entitles a defendant to resentencing if the underlying judgment includes a prior-prison-term enhancement that was imposed before January 1, 2020, regardless of whether the enhancement was then executed or instead stayed. We reverse the Court of Appeal's judgment to the contrary.

## I.

### A.

Before 2019, Penal Code section 667.5, subdivision (b) (section 667.5(b)) instructed trial courts to "impose a one-year term for each prior separate prison term or county jail term" served for a felony, with an exception not applicable here for a five-year period of freedom from custody and felony offenses. (Stats. 1976, ch. 1139, § 268, p. 5138, as amended by Stats. 2011, ch. 15, § 442, p. 458; see *People v. Langston* (2004) 33 Cal.4th 1237, 1241 (*Langston*).)

In 2019, in an effort to reduce the societal and fiscal burdens of incarceration, the Legislature passed Senate Bill No. 136 (2019–2020 Reg. Sess.) (Senate Bill No. 136), which amended section 667.5(b) to eliminate prior-prison-term enhancements for all prior crimes except for "sexually violent offense[s] as defined in subdivision (b) of Section 6600 of the Welfare and Institutions Code." (Stats. 2019, ch. 590, § 1.) In 2021, Senate Bill No. 483 (2021–2022 Reg. Sess.) made this change retroactive. It enacted Penal Code section 1171.1 (Stats. 2021, ch. 728, §§ 1, 3), later renumbered without substantive change as Penal Code section 1172.75 (section 1172.75) (Stats. 2022, ch. 58, § 12), which declares: "Any sentence enhancement that was imposed prior to January 1, 2020, pursuant to subdivision (b) of Section 667.5, except for any enhancement

imposed for a prior conviction for a sexually violent offense as defined in subdivision (b) of Section 6600 of the Welfare and Institutions Code is legally invalid." (§ 1172.75, subd. (a) (section 1172.75(a)).)

A defendant serving a term for a judgment that includes a now-invalid enhancement is entitled to resentencing. (§ 1172.75, subds. (a), (c).) To facilitate the process, the statute directs California's Department of Corrections and Rehabilitation (CDCR) to "identify those persons in their custody currently serving a term for a judgment that includes an enhancement described in subdivision (a)." (*Id.*, subd. (b).) Upon receiving that information, the sentencing court must "review the judgment and verify that the current judgment includes a sentencing enhancement described in subdivision (a)." (*Id.*, subd. (c).) "If the court determines that the current judgment includes an enhancement described in subdivision (a), the court shall recall the sentence and resentence the defendant." (*Ibid.*) The statute provides separate deadlines for identification, review, and resentencing of "individuals . . . currently serving a sentence based on the enhancement" and "all other individuals." (*Id.*, subds. (b)(1), (2), (c)(1), (2).)

Section 1172.75, subdivision (d) sets forth detailed instructions for resentencing once a sentence has been recalled. As relevant here, subdivision (d) specifies: "Resentencing pursuant to this section shall result in a lesser sentence than the one originally imposed as a result of the elimination of the repealed enhancement, unless the court finds by clear and convincing evidence that imposing a lesser sentence would endanger public safety. Resentencing pursuant to this section shall not result in a longer sentence than the one originally imposed." (*Id.*, subd. (d)(1).) The trial court must "apply the

sentencing rules of the Judicial Council" as well as "any other changes in law that reduce sentences or provide for judicial discretion so as to eliminate disparity of sentences and to promote uniformity of sentencing." (*Id.*, subd. (d)(2).) In addition, the court may "consider postconviction factors, including, but not limited to, the disciplinary record and record of rehabilitation of the defendant while incarcerated, evidence that reflects whether age, time served, and diminished physical condition, if any, have reduced the defendant's risk for future violence, and evidence that reflects that circumstances have changed since the original sentencing so that continued incarceration is no longer in the interest of justice." (*Id.*, subd. (d)(3).)

## B.

In 2016, defendant Andrew Christian Rhodius was charged with possession of a firearm (Pen. Code, § 29800, subd. (a)(1)), possession for sale of a controlled substance (Health & Saf. Code, § 11378), possession of a controlled substance while armed with a loaded firearm (Health & Saf. Code, § 11370.1), and resisting arrest (Pen. Code, § 148, subd. (a)(1)), with sentencing enhancement allegations that he suffered two prison priors (Pen. Code, § 667.5, former subd. (b)), one serious felony prior (Pen. Code, § 667, subd. (a)), and one strike prior (Pen. Code, §§ 667, subds. (c), (e)(1), 1170.12, subd. (c)(1)). A jury found him guilty on all charges except possession for sale of a controlled substance, on which it hung. In 2017, he agreed to plead guilty to that charge and to admit the prior-prison-term, serious felony prior, and strike prior allegations. In exchange, he received a stipulated sentence of 11 years in this case as well as three years and four months on two other cases, for a total sentence of 14 years, 4 months for all three cases. The trial court

4

imposed one year for each prior-prison-term enhancement "pursuant to the agreement with the [district attorney]" but "stayed [them] permanently pursuant to [Penal Code section] 1385."[1] The effect of granting a stay was to prevent execution of the enhancement, but "preserv[e] the possibility of imposition of the stayed portion should a reversal on appeal reduce the unstayed portion of the sentence." (Advisory Com. com., 23 pt. 2 West's Ann. Court Rules (2024 supp.) foll. rule 4.447, p. 69; see *People v. Lopez* (2004) 119 Cal.App.4th 355, 365; accord, *Brewer*, *supra*, 225 Cal.App.4th at p. 104.)

In 2022, CDCR identified Rhodius as an inmate whose judgment included an enhancement under section 667.5, former subdivision (b), and it so notified the trial court. (See § 1172.75, subd. (b).) At an initial resentencing hearing, the trial court granted Rhodius's oral motion to strike his two prior-prison-term enhancements and amended the abstract of judgment

---

[1] Both sides agree that the stay was unauthorized under the circumstances of the case. As this court explained in *Langston*: "Once the prior prison term is found true within the meaning of section 667.5(b), the trial court may not stay the one-year enhancement, which is mandatory unless stricken." (*Langston*, *supra*, 33 Cal.4th at p. 1241, citing, inter alia, *People v. Jones* (1992) 8 Cal.App.4th 756, 758.) Courts recognized an exception to this general rule permitting the stay of a section 667.5(b) enhancement when the defendant faced another, greater mandatory enhancement for the same prior offense and imposition of both terms was prohibited by law. (*People v. Brewer* (2014) 225 Cal.App.4th 98, 104–105 (*Brewer*); see generally Couzens et al., Sentencing Cal. Crimes (The Rutter Group 2024) § 12:12, p. 844), but no such situation was present here.

accordingly. But at a subsequent hearing, the court denied Rhodius's request for a full resentencing hearing under section 1172.75, subdivision (c). The court reasoned that his prior-prison-term enhancements were not "imposed" within the meaning of section 1172.75(a) because they were imposed and stayed, not imposed and executed.

The Court of Appeal affirmed. (*People v. Rhodius* (2023) 97 Cal.App.5th 38, 41 (*Rhodius*).) Citing *People v. Gonzalez* (2008) 43 Cal.4th 1118, 1127 (*Gonzalez*), the court explained that the Legislature sometimes uses the term " ' "impose" ' " in sentencing laws as a " 'shorthand for "impose and then execute." ' " (*Rhodius*, at p. 43.) The Court of Appeal concluded that the Legislature used the term in this way in section 1172.75. The court relied primarily on inferences drawn from the requirement in section 1172.75, subdivision (d)(1), that resentencing shall result in a "lesser sentence" than the one originally imposed. This provision, the court reasoned, "necessitates the conclusion that the repealed enhancement increased the length of the sentence," which is only possible if the sentence was "imposed and executed." (*Rhodius*, at p. 44.) The court also invoked legislative history indicating that the purpose of the resentencing provision was to ameliorate the impact of extended periods of incarceration attributable to prior-prison-term enhancements. The court reasoned that the statute cannot fulfill this purpose "if a defendant is not actually serving additional time as the result of an imposed and executed sentence associated with a section 667.5(b) prior." (*Id.* at p. 48.)

In so holding, the Court of Appeal expressly disagreed with the reasoning of *People v. Renteria* (2023) 96 Cal.App.5th 1276, 1282, which held that section 1172.75's resentencing procedures apply to section 667.5, former subdivision (b)

enhancements that were imposed and stayed.  After the court issued its decision in this case, other courts weighed in on the same issue.  The decisions of the Courts of Appeal in *People v. Christianson* (2023) 97 Cal.App.5th 300 (*Christianson*), *People v. Saldana* (2023) 97 Cal.App.5th 1270, *People v. Mayberry* (2024) 102 Cal.App.5th 665, and *People v. Bravo* (2025) 107 Cal.App.5th 1144 have all disagreed with the Court of Appeal in this case, instead agreeing with *Renteria* that defendants are entitled to full resentencing based on imposed but stayed section 667.5, former subdivision (b) enhancements.

We granted review to address the disagreement between the decisions of the Courts of Appeal.

## II.

### A.

The issue in this case turns on a question of statutory interpretation.  We employ familiar principles to resolve it.  We first " 'look to the statute's words and give them their usual and ordinary meaning,' " as " '[t]he statute's plain meaning controls the court's interpretation unless its words are ambiguous.' " (*Gonzalez*, *supra*, 43 Cal.4th at p. 1126, quoting *Green v. State of California* (2007) 42 Cal.4th 254, 260.)  We construe statutory text in context and " ' "harmonize 'the various parts of a statutory enactment . . . by considering the particular clause or section in the context of the statutory framework as a whole.' " ' " (*People v. Lewis* (2021) 11 Cal.5th 952, 961 (*Lewis*), quoting *People v. Arroyo* (2016) 62 Cal.4th 589, 595.)  If, after this analysis, "the statute is ambiguous, we may consider a variety of extrinsic aids," including legislative history.  (*Gonzalez*, at p. 1126.)

Our inquiry thus begins with the text.  Subdivision (a) of

section 1172.75 declares "[a]ny sentence enhancement that was imposed prior to January 1, 2020" for a prior prison or jail sentence under section 667.5, former subdivision (b), other than for a sexually violent offense, to be "legally invalid." If a court determines that an individual is serving a term based on a judgment that "includes an enhancement described in subdivision (a), the court shall recall the sentence and resentence the defendant." (§ 1172.75, subd. (c); see *id.*, subd. (b).) In other words, a prior-prison-term enhancement "imposed" before 2020 is now invalid, and any prisoner whose judgment includes such an enhancement is entitled to resentencing under section 1172.75.

The critical question before us concerns the meaning of the word "imposed." Does it mean that the enhancement must simply have been imposed? Or does it mean, as the Attorney General argues and the Court of Appeal held, that the enhancement must have been *both* imposed and executed, rather than stayed?

The answer might seem obvious at first blush. After all, the statute refers to enhancements that are "imposed," not "imposed and executed." The Attorney General does not dispute that, as a matter of ordinary usage, an enhancement is "imposed" when it is made part of a legally effective order, as it was in Rhodius's case. (See Webster's 3d New Internat. Dict. (1993) p. 1136, col. 1 [defining "impose" as "to make, frame, or apply . . . as compulsory, obligatory, or enforc[ea]ble"]; see also American Heritage Dict. (5th ed. 2011) p. 883, col. 2 [defining "impose" to mean "establish or apply as compulsory" or "bring about by authority or force"].) Courts, including the trial court in this case, frequently employ the term "impose" in a manner consistent with the understanding that "imposi[ng] [a]

sentence" is equivalent to pronouncing a judgment, such that "where the court suspends execution of [a] sentence," that does not obviate the judgment, but merely makes it " 'provisional or conditional in nature.' " (*People v. Chavez* (2018) 4 Cal.5th 771, 781, quoting *Stephens v. Toomey* (1959) 51 Cal.2d 864, 871.)  So unless we are to infer additional limitations not appearing on the face of the statute, it might seem clear that Rhodius meets the statutory requirement for section 1172.75 resentencing.

The matter is not, however, as straightforward as it might first seem.  Even though Rhodius's section 667.5(b) enhancement was unquestionably "imposed" within the ordinary meaning of that term, we have also recognized that the word " 'impose' " is sometimes " 'employed as shorthand' " in sentencing laws to refer to the class of enhancements that are "imposed and then *executed*." (*Gonzalez*, *supra*, 43 Cal.4th at p. 1125, quoting *People v. Bracamonte* (2003) 106 Cal.App.4th 704, 711.)  Determining whether the Legislature has used the term "impose" in this "shorthand" manner requires an analysis of the context in which the term appears.

*Gonzalez* illustrates the point.  In that case we confronted a question about the meaning of the term "impose" as it appeared in a provision of Penal Code section 12022.53, which sets out a series of escalating enhancements for the use of a firearm in certain felonies.  Our inquiry centered on statutory language providing, in relevant part, that "[o]nly one additional term of imprisonment under this section shall be imposed per person for each crime.  If more than one enhancement per person is found true under this section, the court shall impose upon that person the enhancement that provides the longest term of

imprisonment." (Pen. Code, § 12022.53, subd. (f).)

In the context of these instructions for the "impos[ition]" of overlapping enhancements, we concluded that the Legislature had used the term " 'impose[d]' " as a shorthand for "imposed and then *executed*." (*Gonzalez*, *supra*, 43 Cal.4th at p. 1127.) This understanding, we concluded, was the only sensible way to understand the use of a term in the context of a provision expressly aimed at "ensur[ing] execution of the maximum enhancement" where multiple enhancements were otherwise applicable. (*Ibid.*) It would, we explained, "be unreasonable for the Legislature to direct the court to impose the longest enhancement in the sense of 'impose and stay.' " (*Ibid.*) Moreover, to understand the prohibition on "impos[ing]" cumulative enhancements as referring, in context, to imposing and executing them would mean that trial courts could impose and stay such enhancements, and so ensure that an otherwise applicable enhancement could be later executed should the enhancement with the longest term of imprisonment be invalidated on appeal. (*Ibid.*) This, too, would further the purpose behind the enactment of the firearm enhancement statute.

Although *Gonzalez* explains that the meaning of the word "imposed" may vary depending on context, its interpretation of the word as it appears in the statute there at issue holds no real lessons for understanding the meaning of "imposed" as it appears in section 1172.75(a) — a provision with markedly different wording, structure, and purpose. The issue that divides the parties is whether consideration of these indicia of statutory meaning should lead us to conclude that here, too, the Legislature used the term "imposed" in section 1172.75(a) as "shorthand" to mean not just "imposed" but "imposed and then

*executed.*" (*Gonzalez, supra*, 43 Cal.4th at p. 1127.)

The Attorney General's central argument is that reading section 1172.75(a)'s reference to "imposed" enhancements to mean enhancements that were imposed *and* executed is the only way to harmonize that provision with the statute's instructions for resentencing in subdivision (d). The Attorney General points in particular to subdivision (d)(1), which provides: "Resentencing pursuant to this section shall result in a lesser sentence than the one originally imposed as a result of the elimination of the repealed enhancement, unless the court finds by clear and convincing evidence that imposing a lesser sentence would endanger public safety. Resentencing pursuant to this section shall not result in a longer sentence than the one originally imposed." (§ 1172.75, subd. (d)(1).) Echoing the reasoning of the Court of Appeal, the Attorney General argues that if subdivision (d)(1) prescribes a "lesser sentence" as the usual remedy for the inclusion of an invalid enhancement, that must mean that "the repealed enhancement increased the length of the sentence" — a result that is possible only if the repealed enhancement had been "imposed and executed" rather than imposed and stayed. (*Rhodius, supra*, 97 Cal.App.5th at p. 44; see *id.* at pp. 48–49.)

Reading section 1172.75, subdivision (d)(1) in context, we are not persuaded that the reference to a "lesser sentence" necessarily imports any assumptions about whether the section 667.5(b) enhancement was imposed *and* executed or simply imposed. The premise of the argument is that a "lesser" sentence must mean a sentence that inevitably results in less time served than the original sentence — in other words, a *shorter* operative sentence, setting aside any component of the sentence that had been stayed. It is of course true, as the

11

Attorney General emphasizes, that in the typical case involving an executed enhancement, to order a "lesser" sentence will mean ordering a shorter one. But we see no obvious reason why a trial court cannot also comply with the instruction to order a "lesser" sentence in a case in which a section 667.5(b) enhancement was stayed rather than executed.

The reference to a "lesser" sentence is reasonably understood to mean, as a general matter, that courts must lessen the burdens of the sentence relative to "the one originally imposed as a result of the elimination of the repealed enhancement" (§ 1172.75, subd. (d)(1)) — in other words, the new sentence must eliminate the adverse effects flowing from the now-invalid section 667.5(b) enhancements. In the typical case in which a defendant who is serving a longer term of imprisonment because of a repealed enhancement that was imposed and executed, to eliminate adverse effects of the section 667.5(b) enhancement will indeed mean imposing a shorter (unstayed) sentence relative to the enhanced one. But where the burdens of a section 667.5(b) sentence enhancement are different, what it means to impose a "lesser" sentence may differ as well. As the Court of Appeal explained in *Christianson*, when a sentence is stayed, the trial court retains the ability to "lift the stay and impose the term under certain circumstance[s], such as if an alternately imposed term is invalidated. [Citation.] Thus, a stayed sentence enhancement remains as part of the judgment and continues to carry the potential for an increased sentence in certain circumstances, and removal of the stayed enhancement does provide some relief to the defendant by eliminating that potential." (*Christianson*, *supra*, 97 Cal.App.5th at p. 312; see also, e.g., *Gonzalez*, *supra*, 43 Cal.4th at p. 1129 [staying Pen. Code, § 12022.53 firearm enhancements

made them "*readily* available should the section 12022.53 enhancement with the longest term be found invalid on appeal"].) We see no reason why subdivision (d)(1) of section 1172.75 cannot be read to allow for the possibility that, in a case involving stayed enhancements, a trial court may comply with the instruction to impose a "lesser" sentence by ordering a sentence that affords such relief.

In sum, we do not see in section 1172.75, subdivision (d)(1) any convincing textual proof that the Legislature was concerned exclusively with the elimination of enhancements that had already been executed. On the contrary, other features of the statute point against that conclusion.

First, we return to the wording of section 1172.75(a): "*Any* sentence enhancement that was imposed prior to January 1, 2020, pursuant to subdivision (b) of Section 667.5, except for any enhancement imposed for a prior conviction for a sexually violent offense as defined in subdivision (b) of Section 6600 of the Welfare and Institutions Code is legally invalid." (Italics added.) " '[R]ead naturally, the word "any" has an expansive meaning, that is, "one or some indiscriminately of whatever kind." ' " (*Ali v. Federal Bureau of Prisons* (2008) 552 U.S. 214, 219, quoting *United States v. Gonzales* (1997) 520 U.S. 1, 5.) Although not independently dispositive, "[u]se of the term 'any' to modify the words [sentence enhancement] demonstrates the Legislature intended the law to have a broad sweep . . . ." (*Ennabe v. Manosa* (2014) 58 Cal.4th 697, 714; accord, e.g., *Pineda v. Williams-Sonoma Stores, Inc.* (2011) 51 Cal.4th 524, 533.)

Second, and more fundamentally, there is the matter of the statute's structure and practical operation. The Attorney

General's arguments focus on inferences drawn from section 1172.75's instructions about the conduct of resentencing in section 1172.75, subdivision (d). But the operative provision we are called on to interpret, section 1172.75(a), is not about resentencing. Rather, it specifies which enhancements are now "legally invalid" following the Legislature's retroactive repeal of prior-prison-term enhancements for most offenders. (§ 1172.75(a).) The statute's resentencing procedures follow inexorably from invalidity, not the other way around. (See § 1172.75, subd. (c).) So the question before us is whether the Legislature intended for some category of previously imposed section 667.5(b) enhancements to remain valid under section 1172.75 — notwithstanding its declaration that enhancements imposed prior to January 1, 2020, are, generally speaking, now invalid — because the enhancements were stayed rather than executed. We consider it unlikely that this is how the Legislature intended for the retroactive invalidation of section 667.5(b) enhancements to operate. The Attorney General responds that, as a practical matter, the Legislature may have seen no need to retroactively invalidate stayed enhancements. According to the Attorney General, the Legislature reasonably anticipated that if the defendant's sentence were reopened for other reasons, a court could not order the execution of a previously stayed section 667.5(b) enhancement without running afoul of Senate Bill No. 136. In other words, the Legislature intended to exempt the class of stayed section 667.5(b) enhancements from its rule of retroactive invalidation on the theory that even if defendants cannot fix the problem now, they should be able to fix the problem later.

The Attorney General's theory is not implausible. But if it was the Legislature's intent to defer the invalidation and

reexamination of stayed section 667.5(b) enhancements, we expect that it would have put the matter more plainly. Again, the operative statutory language says in pertinent part that "[*a*]*ny* sentence enhancement that was imposed prior to January 1, 2020, . . . is legally invalid." (§ 1172.75(a), italics added.) When the Legislature drafted section 1172.75, it was presumably aware that courts had sometimes stayed section 667.5(b) enhancements in the years before Senate Bill No. 136 took effect. (See, e.g., *Brewer*, *supra*, 225 Cal.App.4th at pp. 104–105 [ordering stay of § 667.5(b) enhancements where trial court imposed sentence for § 667.5(a) enhancements based on same prison terms]; see also, e.g., *In re W.B.* (2012) 55 Cal.4th 30, 57 ["[T]he Legislature is presumed to know about existing case law when it enacts or amends a statute"].) It was also presumably aware that courts had already applied Senate Bill No. 136's reform of section 667.5(b) "retroactively to *all* cases not yet final on January 1, 2020" (*Christianson*, *supra*, 97 Cal.App.5th at p. 309, italics added), including in cases in which the prior-prison-term enhancements had been stayed (see, e.g., *People v. Herrera* (2020) 52 Cal.App.5th 982, 995–996). (See Assem. Com. on Public Safety, Analysis of Sen. Bill No. 483 (2021–2022 Reg. Sess.) as amended July 7, 2021, p. 3.) Had the Legislature drafting the rule of retroactive invalidation in section 1172.75(a) wished to establish a different set of rules for cases involving stayed prior-prison-term enhancements, we expect that it would have said so. (See *People v. Landry* (2016) 2 Cal.5th 52, 105.) But the statute's broad statement of legal invalidity makes no mention of stayed enhancements. We see thus no sound basis to conclude that the Legislature intended to exempt stayed enhancements from prompt invalidation and reexamination, instead choosing to put those matters off for

15

another day. And it is, of course, "not our function . . . to add language or imply exceptions to statutes passed by the Legislature." (*Roberts v. City of Palmdale* (1993) 5 Cal.4th 363, 372.)

## B.

In sum, we conclude that section 1172.75(a) is most naturally read to mean that a covered enhancement is invalid if it was "imposed" before January 1, 2020, not just if it was "imposed *and* executed." But "[e]ven if we considered the language and structure of section [1172.75] to be susceptible to the Court of Appeal's . . . reading," and thus employed " ' "other aids, such as the statute's purpose, legislative history, and public policy" ' " (*Lewis, supra,* 11 Cal.5th at p. 967), we would find nothing in that inquiry that persuades us to adopt a different conclusion.

As an initial matter, we note that the Attorney General's argument that stayed section 667.5(b) enhancements remain valid for the time being is "inconsistent with the repeated — and unqualified — statements throughout the legislative history that Senate Bill 483 'applies retroactively . . . the repeal of sentence enhancements for prior prison or county jail felony terms.' " (*People v. Espino* (2024) 104 Cal.App.5th 188, 200, review granted Oct. 23, 2024, S286987 (*Espino*), quoting Sen. Rules Com., Off. of Sen. Floor Analyses, Analysis of Sen. Bill No. 483 (2021–2022 Reg. Sess.) as amended Sept. 1, 2021, p. 1; see also, e.g., Assem. Com. on Appropriations, Analysis of Sen. Bill No. 483 (2021–2022 Reg. Sess.) as amended July 15, 2021, p. 1 ["This bill retroactively applies the repeal of sentence enhancements for prior prison or county jail felony terms"]; Assem. Com. on Public Safety, Analysis of Sen. Bill No. 483,

*supra*, as amended July 7, 2021, p. 1 ["Applies the repeal of sentence enhancements for prior prison or county jail felony terms"]; Sen. Com. on Public Safety, Analysis of Sen. Bill No. 483 (2021–2022 Reg. Sess.) as amended Mar. 3, 2021, p. 1 ["The purpose of this bill is to apply retroactively the repeal of sentence enhancements for prior prison or county jail felony terms . . . ." (boldface & italics omitted)].)   Such statements strongly suggest that the Legislature did not intend to render Senate Bill No. 136's invalidation of section 667.5(b) enhancements only *partially* retroactive.   (See *Espino*, at p. 200.)

The Attorney General points to the uncodified preamble of Senate Bill No. 483, which states that "in order to ensure equal justice and address systemic racial bias in sentencing, it is the intent of the Legislature to retroactively apply . . . Senate Bill 136 . . . to all persons currently serving a term of incarceration in jail or prison for these repealed sentence enhancements." (Stats. 2021, ch. 728, § 1.)  The Attorney General argues that the preamble, with its focus on "custodial time that is presently being served as a result of the invalidated prior prison term enhancements," shows that the statute was intended to apply only to executed enhancements.

While the preamble is " ' "entitled to consideration" ' " in discerning the legislative purpose (*Doe v. Superior Court* (2023) 15 Cal.5th 40, 69), we find it unrevealing on the issue before us. To read this statement of intent as limiting application of the statute's resentencing procedures to defendants currently serving a term for a prior-prison-term enhancement would be plainly incompatible with section 1172.75, subdivisions (b) and (c), which make clear that resentencing is *not* exclusively available to "individuals who . . . are currently serving a

sentence based on the enhancement." (§ 1172.75, subds. (b)(1), (c)(1).)

As we have previously noted, subdivisions (b)(1) and (c)(1) of section 1172.75 provide separate deadlines by which CDCR must identify and the trial court must resentence defendants "who have served their base term and any other enhancement and are currently serving a sentence based on the enhancement" as opposed to "all other individuals." These subdivisions were intended to prioritize resentencing for defendants for whom review would result in immediate release. But they also make clear that those defendants who are not currently serving time for a repealed enhancement are still entitled to resentencing under section 1172.75, subdivision (c), so long as they are serving a sentence for a judgment that includes a qualifying section 667.5(b) enhancement imposed before January 1, 2020. (See § 1172.75, subd. (c); accord, Assem. Com. on Appropriations, Analysis of Sen. Bill No. 483, *supra*, as amended July 15, 2021, p. 2 [clarifying that Sen. Bill No. 483 applies even when "the enhancement is not currently requiring [a defendant] to remain incarcerated"]; Assem. Com. on Public Safety, Analysis of Sen. Bill No. 136 (2019–2020 Reg. Sess.) as introduced Jan. 15, 2019, p. 4 [explaining that Sen. Bill No. 136 applies to "offenders who have been assessed the one-year enhancement [and] will not serve that time"].) The uncodified preamble to Senate Bill No. 483 certainly indicates that section 1172.75 was intended *at least* to apply to individuals currently serving terms for repealed enhancements. But the preamble does not supply any meaningful indication that the Legislature intended to stop there, and the statute itself demonstrates the contrary.

We note that various pieces of the legislative history

describe the purpose of the legislation in somewhat broader terms. The history indicates that Senate Bill No. 483 was drafted "[i]n recognition of the harms that long periods of incarceration have on community safety and well-being" and to "ensur[e] that no one is serving time based on outdated rules." (Sen. Com. on Public Safety, Analysis of Sen. Bill No. 483, *supra*, as amended Mar. 3, 2021, p. 2.) The history of Senate Bill No. 136 likewise indicates that it was drafted in the hope that "[r]epealing ineffective sentencing enhancements w[ould] save hundreds of millions of dollars" and "reduce prison and jail populations." (Sen. Com. on Public Safety, Analysis of Sen. Bill No. 136 (2019–2020 Reg. Sess.) Jan. 15, 2019, p. 3; see Assem. Com. on Public Safety, Analysis of Sen. Bill No. 136, *supra*, as introduced Jan. 15, 2019, p. 4 [citing goal of "further alleviating California's prison overcrowding issues"]; Assem. Com. on Appropriations, Analysis of Sen. Bill No. 136 (2019–2020 Reg. Sess.) as introduced Jan. 15, 2019, p. 1 [noting "[c]ost savings . . . possibly in the tens of millions of dollars annually"]; Sen. Com. on Public Safety, Analysis of Sen. Bill No. 483, *supra*, as amended Mar. 3, 2021, pp. 2–3 [citing research indicating "that long prison and jail sentences" are "injurious to families and communities"].)

The history makes amply clear that the Legislature was motivated in large part by a purpose of reducing incarceration and thereby reducing public prison expenditures and overcrowding. But this purpose does not, as the Attorney General would have it, necessarily presuppose that defendants must be currently facing the certain prospect of "additional incarceration as a result of a section 667.5(b) prior." (*Rhodius*, *supra*, 97 Cal.App.5th at p. 47.) It is reasonable to conclude that the Legislature also intended for section 1172.75 to accomplish

this purpose through its full resentencing procedures for defendants whose judgments contain now-invalidated section 667.5(b) enhancements, regardless of whether the enhancements were stayed or executed.  By requiring the trial court to consider a broad range of factors in resentencing, including "changes in law that reduce sentences" (§ 1172.75, subd. (d)(2)) and postconviction factors that inure in the defendant's favor (*id.*, subd. (d)(3)), resentencing upon the invalidation of a stayed enhancement may well result in the reduction of the effective length of the defendant's term of incarceration.  At a minimum, resentencing now to eliminate repealed enhancements avoids the uncertainties and delay that would attend a rule that would defer relief from stayed enhancements — and thus relief from the prospect of additional incarceration — to an unknown future date.

What is more, the legislative history suggests that the Legislature's goal was not only to reduce incarceration; the Legislature was also concerned, more generally, with "advanc[ing] fairness in our criminal legal system." (Sen. Com. on Public Safety, Analysis of Sen. Bill No. 483, *supra*, as amended Mar. 3, 2021, p. 3.)  The history indicates that legislators' fairness concerns went to the very rationale underlying prior-prison-term enhancements. (See Assem. Com. on Public Safety, Analysis of Sen. Bill No. 136, *supra*, as introduced Jan. 15, 2019, p. 1 [explaining that the "one-year enhancement re-punishes offenders for previous jail time served — not the actual crime committed"]; *id.* at p. 5 [explaining that an "enhanced punishment . . . predicated on a conviction for which the person was already punished, is fundamentally unjust"]; Sen. Rules Com., Off. of Sen. Floor Analyses, 3d reading analysis of Sen. Bill No. 136 (2019–2020

Reg. Sess.) as amended Sept. 3, 2019, p. 1 [noting that repealing the enhancement would "ensur[e] that each person is treated the same under the law"].)  The legislative history contains no indication that the Legislature distinguished in this regard between those enhancements that have been executed and those that were stayed.

The Attorney General argues that Rhodius's interpretation undermines the Legislature's goals of "ensur[ing] equal justice" and "promot[ing] uniformity of sentencing" (Stats. 2021, ch. 728, §§ 1, 3; see § 1172.75, subd. (d)(2)) because it allows defendants with improperly stayed, but not stricken enhancements, to receive full resentencing.  The premise of this argument — that defendants with *stricken* prior-prison-term enhancements are not entitled to the statute's resentencing procedures — is beyond the scope of this case.[2]  But as to the Attorney General's broader point, *any* retroactive sentencing remedy confined to a particular group of defendants will inevitably undermine uniformity in some ways — even as it promotes it in others.  Here, it appears the Legislature's primary concern was not merely with sentencing uniformity in the

---

[2]     In this case, we resolve a conflict in the Courts of Appeal concerning prior-prison-term enhancements that were imposed and stayed.   Other appellate cases have addressed the application of section 1172.75 where prior-prison-term enhancements were stricken and where the punishment for the enhancements were stricken.   (See *Espino, supra,* 104 Cal.App.5th at pp. 196–198, rev. granted [holding that § 1172.75(a) encompasses prior-prison-term enhancements for which punishment was stricken]; *People v. Tang* (2025) 109 Cal.App.5th 1003, 1010 [distinguishing *Espino* and holding that when an enhancement, not just its associated punishment, was stricken, it was not "imposed" within the meaning of § 1172.75(a)].)  These issues are not before us here.

abstract; it was with aligning the treatment of defendants with section 667.5(b) enhancements imposed before 2020 with the treatment of those sentenced after 2020. Our reading of section 1172.75(a) is consistent with that goal.

In sum, considering what the history reveals about the Legislature's purpose for enacting section 1172.75, we see no persuasive reason to think that the Legislature intended implicitly to distinguish between defendants whose enhancements were imposed and executed and those for whom an enhancement was imposed, but punishment was stayed.

## III.

The Attorney General argues that it is not necessary to read section 1172.75 as reaching defendants with stayed enhancements because such individuals have alternative paths to relief. The Attorney General points to Penal Code section 1172.1, originally enacted at the same time as section 1172.75, which allows courts to resentence an offender " 'at any time if the applicable sentencing laws at the time of original sentencing are subsequently changed by new statutory authority or case law.' " (Quoting Pen. Code, § 1172.1, subd. (a)(1).) We see no reason to suppose that the Legislature that drafted section 1172.75 intended for individuals with stayed prior-prison-term enhancements to lean on the general resentencing authority conferred by section 1172.1, instead of pursuing the relief the Legislature specifically made available for individuals with now-invalid prior-prison-term enhancements. At the time section 1172.1 (then numbered as § 1170.03) was enacted, that provision granted the trial court the discretion to resentence defendants with felony convictions, but only at the request of correctional or prosecutorial officials. (Stats. 2021, ch. 719, § 3.)

It was not until 2023 that Penal Code section 1172.1 was amended to allow a trial court to recall a sentence and resentence a defendant "at any time if the applicable sentencing laws at the time of original sentencing are subsequently changed by new statutory authority or case law." (Pen. Code, § 1172.1, subd. (a)(1), as amended by Stats. 2023, ch. 446, § 2.) And still today, resentencing under section 1172.1 is not compulsory; section 1172.1 instead operates as " 'an invitation to the court to exercise its equitable jurisdiction.' " (*People v. McMurray* (2022) 76 Cal.App.5th 1035, 1040, quoting *People v. Frazier* (2020) 55 Cal.App.5th 858, 866; see *People v. Hodge* (2024) 107 Cal.App.5th 985, 997 ["[S]ection 1172.1 places no constraints on the trial court's decision declining to initiate reconsideration of a sentence on its own motion"].) By contrast, the procedures for recall and resentencing under section 1172.75 are mandatory where they apply. One resentencing statute is not a substitute for the other.[3]

In sum, we conclude that section 1172.75(a) applies to

---

[3] The Attorney General also contends that because, in this particular case, the original sentencing court's decision to stay the enhancements was concededly unauthorized, the trial court could now correct the error by administratively striking the enhancements without conducting a full resentencing hearing under section 1172.75. Rhodius responds that it is not permissible for a trial court to administratively amend the judgment to correct an error based on its misunderstanding of the scope of its authority to stay an enhancement under Penal Code section 1385, subdivision (a); the only possible mechanism for correction would be to hold a new sentencing hearing at which the trial court would exercise its discretion in a manner consistent with law. This issue is not presently before us and we express no views on it. The trial court in this case proceeded

enhancements that were imposed as part of the defendant's original judgment, regardless of whether the enhancement was stayed or executed. If the enhancement is no longer authorized under the current version of section 667.5(b), section 1172.75(a) renders the enhancement invalid. And the retroactive invalidation of the previously imposed enhancements in turn mandates resentencing under section 1172.75, according to the procedures set forth therein.

## IV.

The judgment of the Court of Appeal is reversed and the case remanded for further proceedings consistent with this opinion.

**KRUGER, J.**

**We Concur:**

**GUERRERO, C. J.**
**CORRIGAN, J.**
**LIU, J.**
**GROBAN, J.**
**JENKINS, J.**
**EVANS, J.**

---

in a manner that suggests it did not administratively strike the enhancements to correct an error in the judgment, but instead struck the enhancements in connection with Rhodius's request for relief under section 1172.75. (As we have explained, however, where § 1172.75 applies, it requires full resentencing, not simply striking the now-invalidated priors. (*Id.*, subd. (d).)) Whether the trial court could instead administratively strike the priors to correct an error in the original judgment is an issue the Court of Appeal has not addressed and which falls outside the question presented for our review.

*See next page for addresses and telephone numbers for counsel who argued in Supreme Court.*

**Name of Opinion**  People v. Rhodius

_____

**Procedural Posture** (see XX below)
**Original Appeal**
**Original Proceeding**
**Review Granted (published)** XX 97 Cal.App.5th 38
**Review Granted (unpublished)**
**Rehearing Granted**

_____

**Opinion No.** S283169
**Date Filed:** June 26, 2025

_____

**Court:** Superior
**County:** Riverside
**Judge:** John D. Molloy

_____

**Counsel:**

Matthew Aaron Lopas, under appointment by the Supreme Court, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Michael R. Johnsen, Robin Urbanski, Paige Hazard, Minh U. Le, Christine Y. Friedman and Joseph C. Anagnos, Deputy Attorneys General, for Plaintiff and Respondent.

**Counsel who argued in Supreme Court (not intended for publication with opinion):**

Matthew Aaron Lopas
Attorney at Law
333 South Juniper Street, Suite 110
Escondido, CA 92025
(760) 317-1640

Joseph C. Anagnos
Deputy Attorney General
600 West Broadway, Suite 1800
San Diego, CA 92101
(619) 738-9010